IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No.

| | |
|---|---|
| TINA MARIE JOHNSON, individually and as representative of the Estate of Brittany Marie Johnson; WILLIAM THOMAS JOHNSON III, as co-representative of the Estate of Brittany Marie Johnson, and A. J. a minor, by and through her Guardian Ad Litem, as heir to Brittany Marie Johnson, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> ALEXANDER MELVIN, *in his individual capacity*; TIMMIE CLEMMONS *in his individual capacity*, BRIAN M. CHISM, *in his individual capacity* and *his official capacity* as the Sheriff for Brunswick County, North Carolina, and Alice Camden Alessandra, *in her individual capacity*, and JOHN DOES 1-5, inclusive, <br> *Defendants.* | **COMPLAINT** <br> (With Jury Demand) |

Plaintiffs Tina Marie Johnson, individually and as the personal representative of the Estate of Brittany Marie Johnson; William Thomas Johnson III, as co-representative of the Estate of Brittany Marie Johnson and A.J., a minor, by and through her Guardian Ad Litem, Tina Marie Johnson, her natural grandmother, allege the following:

## **INTRODUCTION**

1.      In this civil rights action, Plaintiffs seek damages under 42 U.S.C. § 1983 for violations of the United States Constitution along with damages for violations of the North Carolina common law, in connection with the death of Brittany Marie Johnson.

2.      Plaintiffs further seek the payment of attorneys' fees and the costs of maintaining this action as provided by statute, as well as other and further relief as is deemed

necessary and proper by the Court.

## JURISDICTION AND VENUE

3.      This civil action is brought for the redress of deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. This case also arises under the common law of the State of North Carolina and N.C. Gen. Stat. § 28A-18-2.

4.      This Court has jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all material events giving rise to this action occurred in Brunswick County, North Carolina, which is within the Southern Division of the United States District Court for the Eastern District of North Carolina.

## PARTIES

5.      At all relevant times, Brittany Marie Johnson was an individual residing in the Town of Supply, in Brunswick County, North Carolina. Johnson is White.

6.      Plaintiff Tina Marie Johnson is an individual residing in Brunswick County, North Carolina and, was at all relevant times, the natural mother of Brittany Marie Johnson. Tina Marie Johnson sues both in her individual capacity as the mother of Brittany Johnson, and in a representative capacity as the personal representative of the Estate of Brittany Marie Johnson. In her representative capacity, Tina Marie Johnson seeks both survival and wrongful death damages under federal and state law.

7.      Plaintiff William Thomas Johnson, III ("Tom Johnson") is an individual residing in Brunswick County, North Carolina. Mr. Johnson sues in his capacity as co-

representative of the Estate of Brittany Marie Johnson. In his representative capacity, Mr. Johnson seeks both survival and wrongful death damages under federal and state law.

8. Plaintiff A.J. is a minor individual residing in Brunswick County, North Carolina, and is the natural born daughter to Brittany Marie Johnson. A.J. sues by and through her natural grandmother and Guardian Ad Litem, Tina Marie Johnson. A.J. sues both in her capacity as the daughter of Brittany Johnson and in her representative capacity as an heir and successor- in-interest to Brittany Johnson. A.J. seeks both survival and wrongful death damages under federal and state law.

9. Defendant, Alexander Melvin is a citizen and resident of Brunswick County, North Carolina. At all relevant times, Defendant Melvin was a duly sworn deputy with the Brunswick County Sheriff's Office ("BCSO") assigned to its Drug Enforcement Unit (DEU) and his actions were taken under color of state law and were within the scope and course of his duties as a BCSO deputy assigned to the DEU.  Defendant Melvin is sued in his individual capacity. Melvin is White.

10. Defendant, Timmie Clemmons is a citizen and resident of Brunswick County, North Carolina. At all relevant times, Defendant Clemmons was a duly sworn detective with the BCSO assigned to its Criminal Investigations Division ("CID") and his actions were taken under color of state law and were within the scope and course of his duties as a BCSO detective.  Defendant Clemmons is sued in his individual capacity. Clemmons is White.

11. Defendant Brian M. Chism resides in Brunswick County, North Carolina. At all relevant times, Sheriff Chism acted under the color of state law as the Sheriff of Brunswick County, North Carolina. As Sheriff, Defendant Chism's responsibilities included, but were not limited to, developing, implementing, and monitoring his deputies' compliance with state and federal law and the BCSO's standard operating procedures ("SOP"). Additionally, as the Sheriff of Brunswick County, North Carolina, Sheriff Chism was responsible for hiring,

training, and overseeing the BCSO and its personnel, including deputies assigned to the Drug

Enforcement Unit ("DEU") and the Selective Enforcement Unit ("SEU"). Finally, as the

Sheriff, he also served as the primary policymaker for the BCSO. Consequently, the Plaintiffs

are suing Defendant Chism in his individual and official capacity. Chism is White.

12.     Upon information and belief, Defendant, Alice Camden Alessandra is a citizen

and resident of Brunswick County, North Carolina. At all relevant times, Defendant Alessandra

was a state-certified probation/parole officer with the North Carolina Department of Adult

Correction, Division of Community Supervision. Her acts and omissions were taken under

color of state law and were within the scope and course of her duties as a state-certified

probation/parole officer. Defendant Alessandra is sued in her individual capacity. Alessandra is

White.

13.     At all times relevant to the claims herein, JOHN DOES 1-5 ("DOES 1-5") were

duly deputies and employees of the Brunswick County Sheriff's Office, who were acting under

color of state law within the course and scope of their respective duties as law enforcement

officers with the complete authority and ratification of the North Carolina Constitution.  DOES

1-5 are being sued in their individual capacity.

14.     The true names of Defendants DOES 1 through 5, inclusive, are unknown to the

Plaintiffs, who therefore sue these Defendants by such fictitious names.  Plaintiffs will seek

leave to amend this Complaint to reflect the true names and capacities of these Defendants

when they have been ascertained.  Each of the fictitious named Defendants is responsible in

some manner for the actions, omissions, and liabilities alleged herein.

15.     .     Although not a named party defendant, Brunswick County, North

Carolina, is a body politic and corporate within the meaning of NC. Gen. Stat. § 153A-11. Said

body politic is capable of suing and being sued. Said body politic is also a "person" within the

meaning of the Civil Rights Act of 1871, 42 USC §§ 1981, 1983 & 1988. The Board of County

Commissioners appropriates funds through its governing body and oversees the budget for the Brunswick County Sheriff's Office. Further, said body is responsible for ratifying the policies, practices, and procedures developed, implemented, and executed by the Defendants.

16.    .At all relevant times to the transactions and occurrences described in this Complaint, Brunswick County, North Carolina, waived governmental immunity from civil liability by purchasing general and supplemental liability insurance covering the claims raised herein.

## **FACTS**

17.    On December 26, 2022, Brittany Johnson (Ms. Johnson) died at her home, located at 811 Mt. Pisgah Road, SW, in the Town of Supply, Brunswick County, North Carolina from methamphetamine toxicity.

18.    Ms. Johnson's live-in boyfriend, James Broome (Broome) was well-known to Defendants as a drug user and dealer in Brunswick County. After Broome began sharing information with the BCSO as a "Confidential Informant" (CI), the DEU learned Broome purchased the drugs he used and sold from local drug dealers, William Collins, Jr. (Collins) and Spencer Chatman (Chatman).

19.    Members of the DEU understood Ms. Johnson's relationship with James Broome acquainted her with several individuals purportedly responsible for distributing significant quantities of Heroin, methamphetamine and other illicit drugs throughout Brunswick County. Based upon information and belief, it was Defendant Alexander Melvin that pursued and persuaded Ms. Johnson to be a CI.

20.    The BCSO has a strict prohibition against engaging persons under court-ordered probation as "Confidential Informants," without notifying the offender's probation officer and obtaining prior authorization from the sheriff or district attorney's office. When authorized, "[T]he use of such sources of information were restricted to those situations when probationers

or parolees were directed to or expected (authorized) to associate with persons committing criminal acts." Ms. Johnson's use as a CI, while on probation for drug possession and participating in a drug rehabilitation program, directly contravened BCSO's expressed prohibition against deploying persons under court-ordered probation as "Confidential Informants."

21.     By needlessly inserting Ms. Johnson into an active narcotics investigation, BCSO created a unique circumstance where Ms. Johnson, a probationer and recovering addict could purchase and possess illicit drugs, under color of law.

22.     By intentionally ignoring its own policies against using probationers, parolees, or people with a narcotics addiction as confidential informants in drug investigations, BCSO convinced Ms. Johnson, a recovering substance abuser, to participate in several "controlled buys" from individuals with violent backgrounds and extensive criminal records. Further, by inserting Ms. Johnson into an environment comprised of notorious drug dealers with extensive criminal records, the only means by which she could ease Collins and Chatman's suspicions of her being a CI and, avert the dire consequences of being "outed" as a CI, was to ingest methamphetamines in their presence. This act of self-preservation led to Ms. Johnson's relapse and ultimately her death. In Russell Roscoe's audio- recorded witness interview, he stated Collins believed Brittany was working as a CI for the BCSO.

23.     Broome, along with DEU, knew Collins received information from an undisclosed source (believed to be Broome) that Brittany Johnson was a CI for the BCSO. Along with Collins's suspicion that Brittany was a CI, Ms. Johnson also owed Collins a substantial amount of money. There are several text messages from Collins to Ms. Johnson stating, "she better pay a nigga," and "she is too old to be running around broke." Shortly before her death, Collins began selling Ms. Johnson's clothes. The BCSO, DEU, and Broome all solicited information on Collins and Chatman from Ms. Johnson; yet, despite Collins's

- 6 -

escalating hostility towards Ms. Johnson, Defendants failed to undertake any measures to protect Ms. Johnson after her exposure as a CI.

24.     Without notifying Ms. Johnson's probation officer or receiving prior authorization from the sheriff or district attorney's office, members of the BCSO's Drug Enforcement Unit (DEU) inserted Ms. Johnson, an inexperienced, if not unwitting, informant with a history of substance abuse, into an ongoing criminal enterprise comprised of experienced drug users and traffickers as a CI. Furthermore, given her status as a probationer and known substance abuser, her use as a confidential informant by BCSO is presumed to be without her consent. Ms. Johnson was on probation for possessing Schedule II narcotics and had successfully completed a drug rehabilitation program just before becoming a CI.

25.     While callously disregarding all the known risks of serious harm presented by inserting an inexperienced CI into the middle of an active narcotics investigation, Brunswick County's DEU outfitted the Infotainment Unit (Info. Unit) installed in Ms. Johnson's car (Volkswagen) with a BCSO surveillance program (software program). The program linked her directly to members of the DEU, and incredibly, when the unit was powered on, the home screen read "Brunswick County Surveillance Unit."

26.     Facially, the Infotainment Unit established a link between Ms. Johnson and the BCSO to anyone with access to her car. Fatefully, Collins, a well-known drug trafficker with a history of violence, was observed being driven around Brunswick County in Ms. Johnson's vehicle, by Broome, with the Info. Unit still displaying "Brunswick County Surveillance Unit" on the screen. William Collins Jr. and James E. Broome were seen riding together in Ms. Johnson's Volkswagen approximately two hours before her death. In his recorded statement, James Broome claimed they saw the "Brunswick County Surveillance Unit" displayed on the Info. Unit screen.

27.     By setting up Ms. Johnson's "Brunswick County Surveillance Unit" in such an open and conspicuous location, Defendants made Ms. Johnson's discovery as a CI inevitable and endangered her life. By exposing Ms. Johnson, the Defendants' gross negligence and incompetence, demonstrated a reckless disregard for Ms. Johnson's life that culminated in her death. Prior to her death, members of the DEU failed to warn Ms. Johnson that Collins and Chatman knew about her "Brunswick County Surveillance Unit," and even after her death, members of the DEU failed to remove the program.

28.     At the time of Ms. Johnson's death on December 26, 2022, Collins was on parole and supposedly being monitored by Ms. Alessandra via an ankle-worn Global Positioning Satellite (GPS) bracelet.  Further, as a condition of his probation/parole, Collins was required to notify Ms. Alessandra and receive prior approval before changing his residence. Collins was required to stay away from any known felons, and he was not to possess a firearm. While being monitored by GPS and Defendant Alessandra, Collins continued to sell drugs out of the townhouse he shared with known felons, including a registered sex offender. Reportedly, Collins lived with Spencer Mark Chatman, Josh Cozart, and Megan Mooney in a townhouse on Heron Court in the Briarwood Country Club Complex.

29.     Incredibly, on December 21st and 22nd, Collins, while under BCSO surveillance, sold drugs to a CI engaged in "controlled buys" using monies supplied by the BCSO. In this instance, Collins violated probation/parole by committing several drug-related felonies in the presence of DEU agents. Yet, despite directly observing several drug transactions involving Collins on December 21st and 22nd, DEU allowed Collins and Chatman to remain in the community and continue to sell drugs out of 220 Heron Court, Shallotte, NC, until January 26, 2023.

30.     During the week of December 19, 2022, Collins reputedly traveled to Castle Hayne, NC and picked up a significant quantity of Fentanyl and Meth to sell and distribute

throughout Brunswick County. According to Megan Mooney, a passenger traveling with Collins, while en route to Castle Hayne, he (Collins) expressed his belief that Brittany (Ms. Johnson) was a CI for the BCSO.

31.     There is no indication Defendant Alessandra knew Collins had relocated; there is no indication Defendant Alessandra was monitoring Collins's GPS tracking bracelet; there is evidence that Defendant Alessandra intentionally cleared Collins's GPS tracking alerts, and there is no evidence that BCSO or Defendant Alessandra undertook any measures to hinder Collins's ability to buy and sell drugs.

32.     The DEU's decision not to arrest Collins after witnessing him sell drugs, coupled with Defendant Alessandra's repeated failures to respond to Collins's GPS tracking alerts, left Collins free to post Christmas party photographs of himself on his Facebook (Meta) page flashing large bills and brandishing firearms, actions warranting the immediate revocation of his parole status and return to prison. Because of the Defendants' dereliction of duty, negligence, and gross incompetence, three days later, Brittany Johnson died of a "drug overdose" caused by a methamphetamine injection ("Hot Shot") purchased with BCSO "drug money" from Collins and Chatman and injected by Broome.

33.     The discovery of the Brunswick County Surveillance Unit installed in Ms. Johnson's car led to her unmasking and wrongful death, the DEU's negligent actions and Defendant Alessandra's dereliction of duty deprived Ms. Johnson of her life without due process of law, which is a violation of the Fourteenth Amendment's Due Process Clause. BCSO did not procure a warrant or owner's consent before installing the surveillance unit. As this is the case, BCSO's actions violated Ms. Johnson's Fourth Amendment protections against unreasonable searches and seizures.

34.     Defendant Clemmons and other BCSO detectives refused to investigate Ms. Johnson's death. They immediately classified her cause of death as an "accidental overdose"

based entirely on Ms. Johnson's history of substance abuse and no other factors. Plaintiffs entered Ms. Johnson's residence after her death and discovered needles loaded with blood and another substance openly lying on the face bowl. Plaintiffs turned the needles over to the BCSO for testing and subsequently learned the needles had been destroyed. The BCSO has blocked all efforts by Plaintiffs' to obtain a copy of its investigative file into the death of Ms. Johnson.

35.     Since Ms. Johnson's death, Plaintiffs learned Broome and Collins entered Ms. Johnson's residence several times the night of her death.  According to Broome, he was present in the home when Ms. Johnson suddenly lost consciousness. Broome claims after Ms. Johnson fainted, he immediately called 911, while attempting to perform CPR. However, the audio recordings of Broome's 911 calls to the BCSO capture dispatchers pleading with him to perform CPR on Ms. Johnson and him vacillating about doing so. Brunswick County first responders found Ms. Johnson unresponsive upon entering the residence and listed her time of death as 3:54 a.m. December 26, 2022. Broome's recollection of the events surrounding Ms. Johnson's death, and his role in those events are constantly changing, yet the BCSO's refusal to investigate Ms. Johnson's death remains steadfast.

36.     As a result of the Brunswick County Sheriff's Office and North Carolina Division of Adult Probation and Parole's dereliction of duty and gross negligence, Plaintiffs are making claims against the Defendants, jointly and severally, for all damages sustained by Plaintiffs, including reliance, restitution, compensatory and punitive damages, attorney's fees and costs.

# CLAIMS FOR RELIEF

## COUNT I
### 42 USC § 1983 Violations
### Unreasonable Searches and Seizures

37.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count I.

38.    This claim is brought by Tina Marie Johnson and Tom Johnson in their capacity as representatives of the estate of Brittany Marie Johnson and by A.G., in their capacity as successors-in-interest and heirs of the estate of Brittany Marie Johnson.

39.    Defendant Melvin, along with JOHN DOES 1-5, without a search warrant or consent of the vehicle's registered owner, unlawfully converted the Infotainment Unit ("Unit") installed in Brittany Johnson's car to a "Brunswick County Surveillance Unit" by loading surveillance software onto the Unit, which used GPS to time-stamp and log her location, and sync her phone with the Unit so her contacts, text messages, and search history could be downloaded. The Unit also recorded the opening and closing of doors, along with any changes in weight, and again, documented the time and location for each occurrence. The Unit logged every call she answered, tracked who called and the duration of the call. The Unit could also listen to, and record conversations held inside of the vehicle. The information collected was then forwarded to Defendant Melvin and other members of the DEU.

40.    The Defendants installed a surveillance program onto the infotainment unit set up in the 2019 Volkswagen Beetle owned by Tina Marie Johnson without a search warrant, consent, probable cause, or any other legal justification to conduct a warrantless search. The Defendants' conduct violated Tina Marie Johnson (Owner) and Brittany Marie Johnson's (Possessor) right to be free from an unlawful search as guaranteed by the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

41.     Tina Marie Johnson (Owner) and Brittany Marie Johnson's (Possessor) right to not be subjected to the misconduct of the Defendants was clearly established at the time of the misconduct.

42.     Defendant Alexander and John Does 1-5's conduct was objectively unreasonable under the facts and circumstances then existing.

43.     The Defendants could reasonably foresee the discovery of the "Brunswick County Surveillance Unit" set up in Ms. Johnson's car by Collins, Chatman or other persons involved in trafficking drugs would likely result in serious bodily injury to Ms. Johnson or death.

44.     As a direct and proximate result of Defendants' unlawful searches and seizures, Ms. Johnson suffered damages including serious physical injuries, pain and suffering, and death. As a direct and proximate result of Defendants' unlawful searches and seizures, family members and heirs have suffered damages including the deprivation of love, companionship, comfort, support, society, care and sustenance of Ms. Johnson.

45.     As a direct and proximate result of Defendants' wrongful conduct, Ms. Johnson was injected with a methamphetamine (Hot Shot) that resulted in her death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Tina Marie Johnson and Tom Johnson, as Administrators of the Estate of Brittany Marie Johnson, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendants, jointly and severally, compensatory damages for the injuries and subsequent wrongful death of Brittany Johnson proximately caused by Defendant Melvin and DOES 1-5, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

46.     The conduct of Defendant Melvin and DOES 1-5 was willful, wanton, malicious, and done in a manner that demonstrated a reckless disregard for the rights and life of Brittany Johnson and therefore warrants the imposition of punitive damages.

- 12 -

47.     Accordingly, Defendant Melvin and DOES 1-5 are liable to the Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983.

## COUNT II
### 42 USC § 1983
### Violations of Due Process

48.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count II.

49.     This claim is brought by Tina Marie Johnson and Tom Johnson in their capacity as representatives of the estate of Brittany Marie Johnson and by A.G., in their capacity as successors-in-interest and heirs of the estate of Brittany Marie Johnson.

50.     The BCSO failed to follow its own prohibition against engaging persons under court-ordered probation as "Confidential Informants," without notifying the offender's probation officer and obtaining prior authorization from the sheriff or district attorney's office. Further, Ms. Johnson's use as a CI, while on probation for drug possession and participating in a drug rehabilitation program, directly contravened BCSO's expressed prohibition against deploying persons under court-ordered probation as "Confidential Informants."  Moreover, given her status as a probationer and known substance abuser, her use as a confidential informant is presumed to be without her consent.

51.     Without Ms. Johnson's consent or notifying her probation officer or receiving prior authorization from the sheriff, district attorney's office or the courts, Defendants used Ms. Johnson as a CI in an active narcotics investigation involving persons with extensive criminal records and prior recorded incidences of violence. Further, by placing Ms. Johnson's "Brunswick County Surveillance Unit" in such an open and conspicuous location (front dash of her car), Defendants knowingly made Ms. Johnson's discovery as a CI inevitable and greatly increased her vulnerability to serious bodily injury or death.

- 13 -

52.     Because the Defendants set up the Unit in Ms. Johnson's vehicle to display "Brunswick County Surveillance Unit" on the screen, once Collins and Chatman saw the screen linking Ms. Johnson to the BCSO, she died from an "accidental overdose" shortly after. Defendant Melvin and John Does 1-5's gross negligence deprived Ms. Johnson of her life without due process of law, which is a violation of the Fourteenth Amendment's Due Process Clause.

53.     Defendant Alexander and John Does 1-5's conduct was objectively unreasonable under the facts and circumstances then existing.

54.     Defendant Alexander and John Does 1-5's conduct deprived Ms. Johnson of her rights under the Fourteenth Amendment to the United States Constitution.

55.     Defendant Alexander and John Does 1-5's used Ms. Johnson as a CI without her consent and installed a surveillance program on the infotainment unit of a car without the her permission. The Defendants interfered with Ms. Johnson's privacy and property rights without any legal process or justification under the Fourth Amendment to the United States Constitution.

56.     Ms. Johnson's right not to be subjected to such conduct was clearly established at the time of the misconduct.

57.     As a proximate result of Defendants' wrongful conduct, Ms. Johnson suffered damages including physical injuries, emotional distress, humiliation, loss of reputation, and death. As a proximate result of Defendants' wrongful conduct, Brittany Johnson's family members and heirs have suffered damages including the deprivation of love, companionship, comfort, support, society, care and sustenance of Ms. Johnson.

58.     As a direct and proximate result of Defendants' wrongful conduct, Ms. Johnson was injected with a methamphetamine (Hot Shot) that resulted in her death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Tina Marie Johnson and Tom Johnson, as Administrators of

the Estate of Brittany Marie Johnson, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendants, jointly and severally, compensatory damages for the injuries and subsequent wrongful death of Brittany Johnson proximately caused by Defendant Melvin and DOES 1-5, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

59.     The conduct of Defendant Melvin and DOES 1-5 was willful, wanton, malicious, and done in a manner that demonstrated a reckless disregard for the rights and life of Brittany Johnson and therefore warrants the imposition of punitive damages.

60.     Defendant Melvin and DOES 1-5 are liable to the Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983.

61.     At the time of Ms. Johnson's death on December 26, 2022, Collins was on parole and supposedly being monitored by Defendant Alessandra via an ankle-worn Global Positioning Satellite (GPS) bracelet.  Further, as a condition of his probation/parole, Collins was required to notify Defendant Alessandra and receive prior approval before changing his residence. Collins was required to stay away from any known felons, and he was not to possess a firearm. While being monitored by GPS and Defendant Alessandra, Collins continued to sell drugs out of the townhouse he shared with known felons, including a registered sex offender. Reportedly, Collins lived with Spencer Mark Chatman, Josh Cozart, and Megan Mooney in a townhouse on 220 Heron Court in the Briarwood Country Club Complex.

62.     Defendant Alessandra falsely cleared alerts from Collins's GPS tracking ankle bracelet and reported him as being at his correct address. However, Collins was living with Spencer Chatman and traveling to Castle Hayne, NC with Megan Mooney to procure methamphetamines and fentynal for distribution in Brunswick County. On December 21st and December 22nd of 2022, Collins was observed by Defendant Melvin and John Does 1-5 during

a "controlled buy" selling drugs. However, Collins was not rrested, nor was his probation/parole revoked. Collins stayed in the community and continued to sell drugs until he was arrested on January 26, 2023.

63.     By improperly clearing Collins's GPS tracking alerts, losing the ability to monitor his location in real-time, and permitting Collins to remain free to act as he pleased, Ms. Alessandra allowed Collins to continue to buy and sell drugs, and at some point, Collins sold Broome the amphetamines that caused Brittany Johnson's death.

64.     Ms. Alessandra's actions deprived Ms. Johnson of her life without due process of law.

65.     The conduct of Defendant Alessandra was willful, wanton, malicious, and done in a manner that demonstrated a reckless disregard for the rights and life of Brittany Johnson and therefore warrants the imposition of punitive damages.

66.     Accordingly, Defendant Alessandra is jointly and severally liable with her co-defendants to the Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983.

## COUNT III
## North Carolina Law
## Wrongful Death Arising from Battery

67.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count III.

68.     This claim is brought by Tina Marie Johnson and Tom Johnson in their capacity as representatives of the estate of Brittany Marie Johnson.

69.     Defendant Melvin and DOES 1-5, while working as BCSO deputies assigned to the Drug Enforcement Unit, and while working within the course and scope of their duties by exposing Brittany Johnson as a CI and failing to arrest Collins after observing him engaged in drug transactions on December 21st and December 22nd set in motion Collins and Broome's

opportunity to inject Ms. Johnson with a substance identified as methamphetamines in a quantity sufficient to cause Brittany Johnson's death on December 26, 2022.

70. Defendant Alessandra by improperly clearing Collins's GPS tracking alerts, losing the ability to monitor his location in real-time, and allowing Collins to remain in the community where he sold Broome a substance identified as methamphetamines in a quantity sufficient to cause Brittany Johnson's death on December 26, 2022.

71. The Defendants lacked any lawful justification for clearing Collins's GPS tracking bracelet alerts or failing to immediately return him to prison for selling drugs or probation violations. The Defendants allowed him to remain out in the community where he then sold or "gifted" Broome a sufficient quantity of methamphetamines to inject into Ms. Johnson to cause her death. The Defendants' allowances of Collins and Broome's application of force against Ms. Johnson were not necessary for the proper discharge of their duties.

72. As a proximate result of Defendants' wrongful conduct Brittany Johnson suffered damages including physical injuries, emotional distress, humiliation, loss of reputation, and death.

73. As a proximate result of Defendants' wrongful conduct, Brittany Johnson's family members and heirs have suffered damages including the deprivation of love, companionship, comfort, support, society, care and sustenance of Ms. Johnson.

74. As a direct and proximate result of Defendants' wrongful conduct, Ms. Johnson was injected with a methamphetamine (Hot Shot) that resulted in her death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Tina Marie Johnson and Tom Johnson, as Administrators of the Estate of Brittany Marie Johnson, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendants, jointly and severally, compensatory damages for the injuries and subsequent wrongful death of Brittany Johnson proximately caused by Defendant Alessandra,

Defendant Melvin and DOES 1-5, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

75.     The conduct of Defendant Alessandra, Defendant Melvin and DOES 1-5 was willful, wanton, malicious, and done in a manner that demonstrated their reckless disregard for the rights and life of Brittany Johnson and therefore warrants the imposition of punitive damages.

76.     Defendant Alessandra, Defendant Melvin and DOES 1-5 are liable to the Plaintiffs for compensatory and punitive damages, including wrongful death damages.

**COUNT IV**
**North Carolina Law**
**Wrongful Death Arising from Negligence**

77.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count IV.

78.     This claim is brought by Tina Marie Johnson and Tom Johnson in their capacity as representatives of the estate of Brittany Marie Johnson.

79.     Defendant Alessandra, Defendant Melvin and DOES 1-5 negligently, carelessly, recklessly and unlawfully performed or failed to perform mandatory duties so as to cause the death of Brittany Johnson. These duties include but are not limited to:

(a)     Loading a BCSO surveillance program onto the Infotainment Unit in Ms. Johnson's vehicle that read "Brunswick County Surveillance Unit" on the screen when the unit was powered on; thereby, making Ms. Johnson's connection to the BCSO readily discoverable to anyone riding in her vehicle, including notorious drug traffickers, William Collins Jr. and Spencer Chatman;

(b)     Failing to properly and adequately assess the need to detain and arrest Collins for selling illegal narcotics in the Defendants' presence;

(c)     Failing to report Collins drug transactions on December 21st and December 22nd to his probation/parole officer, or the courts;

(d)     Failing to notify Brittany Johnson that Collins and Chatman discovered she was working for BCSO, and therefore in danger;

(e)     Failing to properly and adequately monitor Collins's satellite-based GPS tracking device to verify his location;

(f)     Intentionally disregarding the GPS tracking alerts put out by Collins's satellite-based GPS tracking device and falsely reporting his compliance with the terms and conditions of his probation/parole; and

80.     In other manners to be proved through discovery and at trial.

81.     Defendant Alessandra, Defendant Melvin and DOES 1-5's actions were corrupt, malicious, and/or perpetrated outside and beyond the scope of their official duties

82.     As a proximate result of Defendants' wrongful conduct Brittany Johnson suffered damages including physical injuries, emotional distress, humiliation, loss of reputation, and death.

83.     As a proximate result of Defendants' wrongful conduct, Brittany Johnson's family members and heirs have suffered damages including the deprivation of love, companionship, comfort, support, society, care and sustenance of Ms. Johnson.

84.     As a direct and proximate result of Defendants' wrongful conduct, Ms. Johnson was injected with a methamphetamine (Hot Shot) that resulted in her death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Tina Marie Johnson and Tom Johnson, as Administrators of the Estate of Brittany Marie Johnson, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendants, jointly and severally, compensatory damages for the injuries and subsequent wrongful death of Brittany Johnson proximately caused by Defendant Alessandra,

Defendant Melvin and DOES 1-5, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

85. The conduct of Defendant Alessandra, Defendant Melvin and DOES 1-5 was willful, wanton, malicious, and done in a manner that demonstrated their reckless disregard for the rights and life of Brittany Johnson and therefore warrants the imposition of punitive damages.

86. Defendant Alessandra, Defendant Melvin and DOES 1-5 are liable to Plaintiffs for compensatory and punitive damages, including wrongful death damages.

## **PRAYER FOR RELIEF**

Based on the foregoing, Plaintiffs pray for the following relief:

(1) That the Court declare that Defendant's practices complained of herein are unlawful under the United States Constitution and the law of North Carolina;

(2) That the Court enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, for compensatory damages in an amount in excess of $25,000, with the exact amount of damages to be determined by a jury;

(3) That the Court enter judgment in favor of Plaintiffs and against Defendants for punitive damages in an amount in excess of $25,000, with the exact amount of damages to be determined by a jury;

(4) That the Court award Plaintiffs pre- and post judgment interest:

(5) That the costs of this action be taxed against the Defendants;

(6) That the Court award Plaintiffs reasonable attorneys' fees as provided by 42 USC §1988;

(7) That the Court grant Plaintiffs a trial by jury; and

(8) For such other further relief as the Court deems just, proper, and appropriate.

RESPECTFULLY SUBMITTED this 26th day of December, 2024.

/s/Ira Braswell IV
Ira Braswell IV, NC Bar No. 41799
BRASWELL LAW, PLLC
P.O. Box 703 Louisburg, NC 27549
Telephone: (919) 623-5413