IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:24-CV-1156-FL

| | | |
|---|---|---|
| TIMA MARIE JOHNSON, individually and as Representative of the Estate of Brittany Marie Johnson; WILLIAM THOMAS JOHNSON III, as co-representative of the Estate of Brittany Marie Johnson; and A.J., a minor, by and through, the Representative of the Estate of Brittany Marie Johnson and as heir to Brittany Marie Johnson, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| ALEXANDER MELVIN, in his individual capacity, TIMMIE CLEMMONS, in his individual capacity, BRIAN M. CHISM, in his individual capacity and his official capacity as the Sheriff for Brusnwick County, North Carolina, and ALICE CAMDEN ALESSANDRA, in her individual capacity, and JOHN DOES 1-5, inclusive, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court upon multiple motions:

1. Partial motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), by defendants Alexander Melvin ("Melvin"), Timmie Clemmons ("Clemmons"), and Brian Chism ("Chism") (DE 15);

2. Motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(5), and (b)(6), by defendant Alice Camden Alessandra ("Camden") (DE 20);

3. Motion to strike by defendants Clemmons, Chism, and Melvin (DE 33);

4. Plaintiff's motion for leave to amend (DE 39); and

5. Motion to Compel by defendant Melvin (DE 46).[1]

For the following reasons, plaintiff's motion for leave to amend is granted in part and denied in part, defendants' motion to strike is granted, and defendants' motions to dismiss are terminated as moot. The motion to compel is referred to magistrate judge for decision on the terms set forth herein.

## STATEMENT OF THE CASE

Plaintiffs commenced this civil rights action on December 27, 2024, asserting claims for 1) unreasonable searches and seizures under 42 U.S.C. § 1983; 2) violations of due process under § 1983; 3) wrongful death arising from battery under North Carolina law; and 4) wrongful death arising from negligence under North Carolina law. Plaintiffs seek declaratory judgment, compensatory and punitive damages, and attorneys' fees under 42 U.S.C. § 1988.

In late March and early April, 2025, defendants filed the instant motions to dismiss, relying on documents from the estate of Brittany Marie Johnson ("decedent"). Thereafter, plaintiffs filed an amended complaint without leave of court on May 8, 2025, which is the object of the instant motion to strike. Plaintiffs then filed motion for leave to amend June 12, 2025. Defendants responded in opposition, relying on affidavits and the toxicology report from decedent's death.

Plaintiffs' proposed amended complaint removes one plaintiff, William Thomas Johnson III as co-representative of the Estate of Brittany Marie Johnson, rearranges the styling of the remaining plaintiffs, alleges various additional facts, adds a second claim for violation of due process under § 1983, and replaces the original claim for wrongful death by battery with "wrongful death arising from negligent facilitation." Defendants Melvin, Clemmons, and Chism responded in opposition to the motion for leave to amend. Camden did not respond thereto.

---

[1] Also pending, but not ripe, is a motion by defendants for extension of time to respond to plaintiffs' discovery requests (DE 48), which motion will be addressed further herein.

## STATEMENT OF FACTS

The facts alleged in the proposed amended complaint are as follows. At all relevant times, decedent resided in Brunswick County, North Carolina. (Proposed Am. Compl. (DE 39-2) ¶ 5). Plaintiff Tina Marie Johnson, individually and as representative of the estate of Brittany Marie Johnson, ("plaintiff Tina Marie Johnson"), also resides in Brunswick County, and is the mother of decedent. (Id. ¶ 6). Plaintiff Tina Marie Johnson sues both in her individual capacity and in her representative capacity as personal representative of decedent's estate. (Id.). Plaintiff A.J. is a minor, and is the daughter of decedent. (Id.). Plaintiff A.J. sues by and through Johnson, in her capacity as heir to decedent and in her capacity as decedent's daughter. (Id. ¶ 7).

Defendant Melvin is a sworn deputy with the Brunswick County Sheriff's Office ("BCSO") assigned to its drug enforcement unit. (Id. ¶ 8). Defendant Clemmons[2] was a sworn criminal investigator with the BCSO assigned to its criminal investigations division. (Id. ¶ 9). Defendant Chism was the sheriff of Brunswick County, and was responsible for developing, implementing, and monitoring his deputies' compliance with law, and for hiring, training, and overseeing the BCSO and its personnel. (Id. ¶ 10). Defendant Camden was a state probation/parole officer. (Id. ¶ 11).[3]

Decedent died of methamphetamine toxicity in her home on December 26, 2022. (Id. ¶ 14). Decedent's live-in boyfriend, James Broome ("Broome"), was well-known to defendants as a drug dealer, and became a confidential informant ("CI") for the BCSO. (Id. ¶ 15). Broome told BCSO that he purchased his drugs from William Collins Jr. ("Collins") and Spencer Chatman

---

[2] Though the complaint names "Timmie Clemmons," defendants repeatedly represent that his real name is "Timothy Clemmons," which plaintiffs do not challenge. At the pleading stage, the court defers to plaintiff's spelling in the caption, but refers to Clemmons under his last name in the body of this order.

[3] Defendants dispute that plaintiff names Camden under the correct first name. As with Clemmons, the court defers to plaintiff's styling in the caption and otherwise refers to Camden only by last name.

("Chatman"). (Id.). Defendants knew that decedent's relationship with Broome acquainted her with drug dealing in Brunswick County, and so defendant Melvin persuaded decedent to become a CI. (Id. ¶ 16).

BCSO maintains a policy that a person on probation or parole shall not be used as a CI, except as authorized by a court or the person's probation officer. (Id. ¶ 17). Defendant Chism was responsible for developing this policy. (Id.). Decedent was recruited for use as a CI while on probation for drug possession and while participating in a drug rehabilitation program, against this policy. (Id.). BCSO therefore inserted decedent, a recovering drug addict and probationer, into a narcotics investigation in which she could purchase and possess drugs. (Id. ¶ 18). BCSO convinced decedent to undertake controlled buys from individuals with extensive criminal records and histories of violence. (Id. ¶ 19). Decedent was forced to ingest methamphetamine in these persons' presences to allay suspicion that she was a CI. (Id.).

Eventually, Collins received information that decedent was a CI. (Id. ¶ 20). Despite a series of menacing text messages from Collins to decedent, BCSO failed to warn or protect decedent after her exposure as a CI. (Id.).

During a narcotics investigation, BCSO inserted a "BCSO surveillance program" (the "program") into decedent's car which, when powered on, displayed "Brunswick County Surveillance Unit." (Id. ¶ 22). The program established a link between BCSO and anybody with access to decedent's car. (Id.). Collins and Broome rode in decedent's car shortly before her death, and in a recorded statement, Broome claimed they saw "Brunswick County Surveillance Unit" on the screen. (Id. ¶ 23). BCSO failed to arrest Collins, who was on probation, despite observing him committing various crimes and consorting with known felons. (Id. ¶ 25). On December 29, 2022, Collins expressed his belief to a third party that decedent was a CI. (Id. ¶ 27).

4

Decedent eventually died from a "hot shot" purchased with BCSO money from Collins and Chatman and administered by Broome. (Id. ¶ 29). This event was the result of decedent's unmasking as CI through the program in her car. (Id. ¶ 30). BCSO never obtained a warrant or consent before installing the program in decedent's car. (Id.).

Broome and Collins entered decedent's residence several times the night of her death. (Id. ¶ 32). Though Broome called 911, the audio recordings of the call reveal that he was reluctant to perform CPR on decedent. (Id.). Decedent's time of death was listed as 3:54 AM on December 26, 2022. (Id.).

## COURT'S DISCUSSION

A..     Motion to Strike

Defendants move to strike purported amended complaint plaintiffs filed on May 8, 2025, without consent or leave of court. This motion is proper.

Federal Rule of Civil Procedure 15 permits a plaintiff to amend as a matter of right within 21 of service, or within 21 days of service of a responsive pleading or a motion under Rule 12, whichever is earlier. Fed. R. Civ. P. 15(a)(1). Plaintiffs effected service on March 19, 2025, so this avenue was untimely. And defendants did not consent to amendment, nor did this court grant leave to do so. Plaintiffs' purported amended complaint filed on May 8, 2025, was improper and defendants' motion to strike this document is granted.

B.     Motion to Amend.

The court now proceeds to plaintiffs' motion to amend. Defendants Melvin, Clemmons, and Chism, oppose amendment on grounds that plaintiffs' wrongful death claims are futile, that A.J. and Tima Marie Johnson in her individual capacity lack standing, and that the amended complaint is presented in bad faith. The court agrees with defendants vis-à-vis futility and

standing, but rejects the last point as based virtually entirely on outside-the-pleadings evidence the court may not consider in this posture. Plaintiffs' motion for leave to amend is therefore granted in part and denied in part.

1. Standard of Review

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be allowed "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).[4] "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation, 914 F.3d 213, 228 (4th Cir. 2019); see In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny.").

2. Analysis

    a. Standing

Defendants argue that plaintiffs A.J. and Tina Marie Johnson in her individual capacity lack standing to present any claims against any defendants. The court agrees.

A.J. purports to present claims in the proposed amended complaint as "the daughter of [decedent]" and "in her representative capacity as an heir and successor-in-interest to [decedent]." (Proposed Am. Compl. ¶ 7).

---

[4] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

State law governs the survivability of § 1983 claims. See 42 U.S.C. § 1988(a); Robertson v. Wegmann, 436 U.S. 584, 594 (1978). Under North Carolina law, only the personal representative or collector of a decedent's estate may bring claims on behalf of beneficiaries of the estate. See N.C. Gen. Stat. § 28A-18-1(a). Here, A.J. is not alleged to be the personal representative or collector of decedent's estate, and therefore lacks standing to present any claims.

Similarly, Tina Marie Johnson lacks standing to sue in her individual capacity. North Carolina law does not grant Tina Marie Johnson standing in this capacity for the reasons just noted, as Tina Marie Johnson's individual capacity is not the personal representative or collector of decedent's estate. N.C. Gen. Stat. §§ 28A-18-1(a), 28A-18-2. Nor does Tina Marie Johnson allege any facts suggesting that any action by any defendant inflicted any injury on her personally, rather than upon decedent. Because Tina Marie Johnson therefore fails to establish any injury to her individual capacity, she lacks standing. See, e.g., FDA v. All. for Hippocratic Med., 602 U.S. 367, 381–82 (2024).[5]

      b.      Futility

Next, defendants Melvin, Clemmons, and Chism, contend that plaintiffs' wrongful death claims are futile under North Carolina law.

Under North Carolina law, claims for wrongful death are subject to a two-year statute of limitations. N.C. Gen. Stat. § 1-53(4). Decedent died on December 26, 2022, so the statute of limitations expired on December 26, 2024. Plaintiffs filed their complaint, however, on December 27, 2024, outside the limitations period.

Plaintiffs contend that these two claims are timely under Federal Rule of Civil Procedure 6(a)(1). This rule provides that the date that triggers the beginning of a period of time is excluded

---

[5] Despite concluding that A.J. and Tina Marie Johnson's individual capacity claims must be dismissed, the court continues to refer to "plaintiffs" in the plural throughout this order for the sake of consistency.

7

from calculations of deadlines from that event. Fed. R. Civ. P. 6(a)(1). But this rule, by its plain language, applies only "in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time." North Carolina's statute of limitations is not the product of the Federal Rules of Civil Procedure, or of any court order or local rule. And North Carolina statutory law clearly states that the cause of action shall accrue on "the date of death," thus removing this claim from the last clause of Rule 6(a)(1). See N.C. Gen. Stat. § 1-53(4).

Indeed, North Carolina courts uniformly apply the plain language of this statute to calculate limitations periods for wrongful death claims as expiring exactly two years from the death, not two years and one day. E.g., Brown v. Kindred Nursing Ctrs. E., LLC, 364 N.C. 76, 79 (2010) ("Because plaintiff's father died on 3 April 2004, the statute of limitations, absent a valid extension, expired on 3 April 2006."); Carlton v. Melvin, 205 N.C. App. 690, 690 (2010) ("This case concerns the death of Adam W. Carlton on 6 June 2003. . . . Pursuant to N.C. Gen.Stat. § 1–53(4), the statute of limitations for a wrongful death action expires two years after the date of death. Thus, the statute of limitations in this matter would have expired on 6 June 2005.").

Because plaintiffs' wrongful death claims are untimely by one day, they fail as a matter of law and leave to present them in an amended complaint is denied.

   c.  Bad Faith

Defendants Melvin, Clemmons, and Chism, argue that denial of leave to amend for bad faith is warranted on three grounds: attempted circumvention of dispositive motions, factual inconsistency with prior pleadings, and factual baselessness. The court is attentive to the last point in particular, but concludes that none of these points can carry the day in this posture, in which the court must apply the Rule 12 standard to the complaint.

8

That defendants have pending motions to dismiss is not grounds to deny the motion for leave to amend. Defendants are correct that, in some circumstances, a motion for leave to amend prompted "only by the concern that [the movant] would lose" on a dispositive motion can be considered to be made in bad faith. Sandcrest Outpatient Servs., P.A. v. Cumberland County Hosp. Sys., Inc., 853 F.2d 1139, 1148–49 (4th Cir. 1988). However, the plaintiff in Sandcrest attempted to amend not at the Rule 12 stage, but at summary judgment, and after already amending once. See id.

Neither circumstance is the case here. Most other cases denying leave to amend for these reasons involved at least one, if not both, of these factors. See Googerdy v. N.C. Agr. & Tech. State Univ., 386 F. Supp. 2d 618, 623 (M.D.N.C. 2005) (second attempt to amend); Goewey v. United States, 886 F. Supp. 1268, 1284 (D.S.C. 1995) (motion to amend made at summary judgment). Because the instant motion is made in the early stages of this case, not at summary judgment after discovery, and in the absence of prior attempts to amend, the court declines to deny leave to amend on this basis.

Next, defendants contend the proposed amended complaint is factually inconsistent with plaintiffs' original complaint. It is true that "chang[ing] substantive facts from one filing to the next to avoid dismissal" can evidence bad faith. United States ex rel. Nicholson v. MedCom Carolinas, Inc., 42 F.4th 185, 200 (4th Cir. 2022). However, defendants do not point to any facts that are irreconcilably altered between complaints, rather than merely supplemented. Defendants first point to the allegation in the original complaint that defendant Melvin persuaded decedent to become a CI, whereas the proposed amended complaint states that defendant Clemmons, in coordination with his co-defendants, inserted decedent into investigations. These statements are not contradictory, and the proposed amended complaint retains the allegation that defendant

9

Melvin persuaded decedent to become a CI. (See Proposed Am. Compl. ¶ 16). Second, defendants object to plaintiffs' addition of a municipal liability claim against Chism in his official capacity. But nothing in these new allegations contradicts anything in the original or proposed amended complaints. (See id. ¶¶ 48–54). These changes do not approach the level of contradiction between complaints on which the court could find bad faith.

Last, defendants contend that the proposed amended complaint includes factually unsupported claims. Defendants support this point with outside-the-pleadings evidence which the court cannot consider in this posture. See, e.g., Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995). Denial of leave to amend on this basis thus is not proper.

Nonetheless, these arguments give the court significant pause. Defendants submit affidavits, presenting testimony under penalty of perjury, that none had ever met decedent outside of one arrest for intoxicated driving, that decedent was never a CI, and that BCSO lacks the technical capability to install a program such as the complaint describes. (See generally Melvin Aff. (DE 41-1); Zeller Aff. (DE 41-2); Sasser Aff. (DE 41-3); Clemmons Aff. (DE 41-4)). And defendants draw the court's attention to Benbow v. Ingram, No. 7:23-cv-292-M, 2025 WL 1303957 (E.D.N.C. May 5, 2025), in which United States Magistrate Judge Robert B. Jones, Jr. levied substantial sanctions against plaintiffs' counsel for making factually unsupported claims against the BCSO and various associated defendants, including Melvin, and for making filings for an improper purpose. See id. at *8–12. Finally, a recent filing by defendants points to deposition testimony from former plaintiff William Thomas Johnson III, in which he admits he has no factual basis for the naming of defendant Clemmons in the complaint. (See William Thomas Johnson III Dep. (DE 43-1) 179–84).

10

Because these materials are all outside the pleadings, they cannot serve as grounds for denial of leave to amend. Nonetheless, they suggest plaintiffs and/or their counsel may have presented factually unsupported and/or improperly motivated claims within the meaning of Federal Rule of Civil Procedure 11(b).

C.  Motions to Dismiss

Because the court grants plaintiffs' motion to amend, defendants' motions to dismiss are terminated as moot. E.g., Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 35 (2025) ("if a plaintiff amends her complaint, the new pleading supersedes the old one: the original pleading no longer performs any function in the case").

D.  Motion to Compel and Motion for Extension

In his motion to compel, defendant Melvin asserts that plaintiff has not adequately responded to his discovery requests. In the motion, defendant Melvin represents plaintiff's position as asserting that she is not responsible for providing materials outside her control and that some materials are considered attorney work product. In his motion for extension of time defendants seek an extension until November 26, 2025, to respond to plaintiff's discovery requests. In the alternative, they seek an extension until no sooner than 30 days after plaintiff adequately responds to defendant Melvin's discovery requests forming the basis for the instant motion to compel.

The court hereby refers the motion to compel to United States Magistrate Judge Kimberly A. Swank for decision thereon. On its own initiative, the court addresses the issues raised by defendants motion for extension of time. To allow for resolution of the motion to compel, and to promote efficiencies in discovery, the court stays the deadline for defendants to respond to plaintiff's discovery requests, with the deadline thereof to be reset by the court at the time of ruling

on the instant motion to compel. In this limited alternative part, defendants' motion for extension of time is granted.

## CONCLUSION

Based on the foregoing, the court orders as follows:

A. Plaintiffs' motion for leave to amend (DE 39) is GRANTED IN PART and DENIED IN PART.

   1. Plaintiffs are DENIED leave to amend her claims for wrongful death arising from negligent facilitation, and wrongful death arising from negligence, on grounds of futility, and to present any claims by A.J. and Tina Marie Johnson in her individual capacity.

   2. All claims by A.J. and Tina Marie Johnson in her individual capacity are DISMISSED WITHOUT PREJUDICE for lack of standing.

   3. Plaintiff's motion is otherwise GRANTED, and plaintiff Tina Marie Johnson as representative of the estate of Brittany Marie Johnson is DIRECTED to file her second amended complaint, with modifications consistent with the rulings herein, within five days of the date of this order.

B. Defendants' motion to strike (DE 33) is GRANTED. The clerk is DIRECTED to STRIKE DE 32, filed May 8, 2025.

C. Defendants' motions to dismiss (DE 15, 20), are TERMINATED AS MOOT.

D. The court REFERS defendant Melvin's motion to compel (DE 46) to United States Magistrate Judge Kimberly A. Swank for decision.

E. The court STAYS the deadline for defendants to respond to plaintiff's discovery requests, with the deadline thereof to be reset by the court at the time of ruling on the instant motion

to compel. In this limited alternative part, defendants' motion for extension of time (DE 48) is GRANTED.

SO ORDERED, this the 6th day of October, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge